## McGONIGALE v. CITY OF DEFIANCE.

(Circuit Court, N. D. Ohio, W. D. December 15, 1905.)

### No. 1,858.

1. MUNICIPAL CORPORATIONS—VALIDITY OF CONTRACTS—STATUTORY LIMITATION.
   A contract between a city and a water company for the furnishing by the latter to the city of water and fire hydrants, for which the city agreed to pay an annual rental in semiannual installments, when made in good faith and carried out by the company by furnishing the water and hy-

drants, is valid and binding upon the city, at least so long as it has taken no action to rescind the same, notwithstanding it was to remain in force by its terms for 30 years, while the power of the city was limited by statute to the making of contracts for not exceeding 20 years.

2. COURTS—FEDERAL COURTS FOLLOWING STATE DECISIONS.

A decision of the Supreme Court of Ohio in a suit brought under Rev. St. Ohio 1906, § 1777, by a city solicitor to enjoin the performance of a contract made by the city with a water company and the payment of any money thereunder on the ground of its invalidity, in which the court denied the relief prayed for on the ground that the suit was barred by limitation, and that the city, by reason of its accepting performance and itself performing the contract for a number of years, was without equity to question its validity, even though not technically operating to render the question of the validity of the contract res judicata, will be given such effect and followed by a federal court in a subsequent action by the water company against the city on the contract, in which the invalidity of the contract is set up as a defense.

[Ed. Note.—State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

3. MUNICIPAL CORPORATIONS—ACTION BY WATER COMPANY ON CONTRACT—DEFENSES.

In an action by a water company against a city to recover hydrant rentals, under a contract which contained certain conditions which the company was required to comply with relating to the quality of water furnished, the pressure to be maintained, etc., it is not a defense that it has failed to meet such conditions in all respects, where it has done so in general, and both parties continued for a number of years to perform the contract, and the city has received the benefit thereof continuously, and has taken no action and given no sufficient notice of its intention to rescind or forfeit the contract because of the failure of the company to comply with all of its conditions.

At Law.

This is an action brought by the plaintiff, as receiver, on the 29th day of April 1904. After the ordinary allegations giving the court jurisdiction, the gravamen of the petition is as follows:

"Plaintiff says that said defendant heretofore, by its certain ordinance and contract duly passed and published. August 17, 1887, leased and rented of one Samuel R. Bullock & Co., their associates, successors, and assigns, one hundred and thirty (130) fire hydrants, and such other and additional fire hydrants in excess of said one hundred and thirty (130)' as might thereafter be furnished at request of said defendant under said contract; and then and thereby said defendant agreed to pay said Samuel R. Bullock & Co., their associates, successors, and assigns, for each of said one hundred and thirty (130) an annual rental of forty (40) dollars, payable semiannually on the 1st days of January and July; and for each of said hydrants in excess of said one hundred and thirty (130) an annual rental of thirty-five dollars, payable semiannually, as aforesaid. It was further agreed by said contract that water should be used from said hydrants for the extinguishing of fires, and for various ous purposes therein specified. Said Samuel R. Bullock & Co. accepted said contract, and by and with the knowledge, consent, and procurement of said defendant, transferred and assigned the same and all rights and privileges acquired thereunder to the said Defiance Water Company. Said water company thereupon constructed and completed a system of waterworks in said city in accordance with said contract; and said defendant thereupon, to wit, on the 1st day of March, A. D. 1889, duly accepted said system and said one hundred and thirty hydrants, and then and thereafter, prior to the 1st day of July, 1897, accepted thirty-one (31) other and additional hydrants, furnished by said water company at defendant's request under said contract, to the total number of one hundred and sixty-one (161) hydrants, under the provisions of said contract. From and after the 1st day of March, 1889, said water company continuously supplied said defendant, under said contract, with wa-

ter through said hydrants for all of the purposes provided for in said contract, and said defendant (excepting a portion of the semiannual installment of rent due July 1, 1895, not herein in dispute) duly paid the rentals therefor down to and including July 1, 1897. From said 1st day of July, 1897, down to the 1st day of January, 1904, said water company continuously supplied the defendant with water under said contract through said one hundred and sixty-one (161) hydrants, and duly performed all of the conditions of said contract on its part to be performed, and said defendant continuously held possession of said hydrants and continuously used water therefrom for all purposes as provided in said contract; and said defendant has never offered or tendered back said hydrants to said water company or to this plaintiff."

Then follow averments of the installments of rentals due, amounting to a total of $40,096.50, with interest on the separate installments from the time each became due.

The answer set up, first, a plea to the qualification of the receiver (to which defense the court sustained a demurrer); second, a general denial; third, that the ordinance or contract sued on was invalid for the reason that it was for a term of 30 years and not ratified by a vote of the people, without which the law did not authorize a contract in excess of 20 years, that it was entire and inseparable, and not valid for 20 years, or any other portion of the 30; fourth, that section 11 of the ordinance provided that, if at any time the gauges should indicate a pressure on the mains of less than 40 pounds per square inch for two weeks in succession, the rentals should cease till the pressure was attained; that the ordinance provided certain rates which might be charged to consumers, and provided the kind of water which should be furnished; and that the hydrants should be frost proof. It was alleged that these requirements had not been complied with, and that section 14 of the ordinance provided "that any neglect or refusal, after due notice, to comply with all the requirements of the ordinance, should cause a forfeiture of the hydrant rental until each and all of said requirements should be complied with." And there were averments of notice.

The reply denied the affirmative parts of the answer, and set up a plea of res judicata and estoppel by judgment of the Supreme Court of Ohio against the third defense of the invalidity of the contract, and estoppel by reason of the construction of the waterworks at large expense, and the performance by both parties in good faith for many years. The reply to the fourth defense was a denial, and averments that the character of the water and the source of supply had always been the same since the construction of the waterworks, and had been accepted by the defendant as complying with the terms of the ordinance, and used by the city for many years without any complaint, and that it was therefore estopped from such defense.

There was a total failure of proof, at the trial, of any lack of fire pressure under section 11 of the ordinance, and the court refused to allow the introduction of evidence in regard to the rates paid by certain private consumers. At the close of all of the testimony in the case, each party moved the court to direct a verdict in his favor.

Henry & Robert Newbegin and Henry W. Seney, for plaintiff.

Harris & Cameron, George T. Farrell, William D. Hill, City Sol., and John H. Doyle, for defendant.

TAYLER, District Judge (orally). I want to say, in a preliminary way, that I appreciate the vast amount of intelligent and informing work that has been done by counsel in connection with this case. And it would seem that the court ought to be fairly well advised, at least, as to the views of counsel who have given to the case so much attention. Of course, I realize, as counsel do, that it is not possible for a court to give that degree of attention to the many and very important questions involved in this case which they have given. This is a case, not only at nisi prius, but before a jury, compelling a speedy determination by the court of the questions

involved. I appreciate, as counsel doubtless do, that it is important to have these questions so decided that they may be reviewed, and, if possible, not reviewed in piecemeal, but as an entirety, so that there may be an end to litigation. Now, I do not say this because the conclusions to which I have come do not satisfy me, for they do; but, nevertheless, I ought to say that, if I felt myself under the necessity of definitively determining these questions and fixing as a finality the rights of the parties, I would take such additional time as might seem to me to be necessary to exhaust, so far as I might, the authorities relating to these questions, and the principles underlying them.

The first question that is presented here is one as to the sufficiency of the petition, and of the proof adduced by the plaintiff in support of it. I am not clear that, as to the questions thus raised and made, with the proof in the case completed, it is proper for the court to say and determine, even if it had that opinion, that, viewing narrowly the allegations of the petition, and the proof made under it in the plaintiff's case in chief, the right of the plaintiff to prosecute this action does not exist. If, coupled with all the other proof in the case, it should appear otherwise, even if it had that right, that question ought to be determined by a consideration of all the pleadings and all the testimony in the case. In other words, I feel that I am determining, now, a demurrer to the proof offered by the plaintiff, and, at the same time, a demurrer by the plaintiff to the defense interposed by the defendant; and I think there is no just way to consider it, except upon that broad view of the case. Nevertheless, I feel constrained to say that I think the petition states a good cause of action, and that the proof adduced by the plaintiff in its evidence in chief sustains that cause of action. I am not now considering the question of the validity of the ordinance or of the contract that is alleged in the petition and proved by the introduction of the ordinance as the primary evidence of that contract. The petition has general averments in it of the making of a contract and of the performance of the contract, and of the indebtedness arising out of it; and there is proof in support of it, consisting of the ordinance, of the fact that the water plant was built, that the city accepted this plant, that the plaintiff supplied water under it, and that, from time to time, up to the period covered by the claim made in this suit, these hydrant rentals were paid. I do not understand that it is necessary, in a contract of this character, that the plaintiff should make, in his own case in chief, specific, formal, and technical proof of the complete performance by it of all the things which, under the contract, it is declared it shall do. I think that would involve all litigation in very great complications, and would violate the very ordinary rules that govern the conduct of lawsuits. A general compliance with the contract must appear, of course; and that appears in this case upon the proof adduced by the plaintiff.

We come now, first, to the consideration of the question whether, under this ordinance, independent of any question of estoppel, and independent of any question of forfeiture, using that term as it has been used in this case, a right to recover exists on the part of the plaintiff. This ordinance is attacked, and its validity is before the

court for consideration. If found to be invalid, then the question occurs whether any estoppel had arisen which would foreclose the right of the defendant to assert that the plaintiff had no right to recover. I cannot say that I have so fully inquired into the grounds upon which this ordinance is sought to be sustained as to thoroughly convince myself that it is valid. I am inclined to the belief that it is valid, taken as an original proposition; that is to say, that, notwithstanding the case of Manhattan Trust Co. et al. v. City of Dayton (decided by the Circuit Court of Appeals of this circuit) 59 Fed. 327, 8 C. C. A. 140, and the cases of City of Wellston v. Morgan, 59 Ohio St. 147, 52 N. E. 127, and 65 Ohio St. 219, 62 N. E. 127, this is a contract which, in its very nature, is a divisible contract; and by that I do not mean that it is a contract that can be pared down from its period of 30 years, so as to come within the term of years that the law allows, so much as that a contract of this character, which is not attacked for want of good faith, or against which it cannot be asserted that it was one wholly without the power of the council to make, but which is a contract providing for the furnishing of water and the payment for it from year to year in semiannual installments, is a good contract for the length of time that it may be permitted to endure. Whether it be a good contract for 20 years is, as it seems to me, another question from that as to whether it is a good contract so long as the parties permit it to last. And, looking forward, perhaps, to the doctrine of estoppel, the municipal corporation cannot say that a contract which the corporation had power to make, which provided for a service from year to year and a payment of rental from year to year, and which the municipal corporation has not undertaken to rescind or declare a forfeiture of, does not exist for the purpose of creating a liability against the municipal corporation for that which was supplied to it during that period, at the price which was contracted for.

Now, I realize, and am greatly impressed by the argument of counsel, that there is a grave, and probably great, necessity for holding that people who contract with municipal corporations without obedience to the requirements of the law should be held to suffer the consequences of their own neglect, or of their failure to see that the law was complied with in respect to that contract. I appreciate the force of that. It is important. But, after all, I think that I am foreclosed on this question of the validity of this contract. At least I prefer to put that interpretation upon the history of the litigation of that quesiton. Judge Severens, in a brief, but evidently well-considered, opinion, which was deemed to be of sufficient importance to be printed in the Federal Reporter, held that this contract was valid; and he so held after he had himself sat in the case of Manhattan Trust Co. et al. v. City of Dayton, supra, as a member of the Circuit Court of Appeals, and had held to a doctrine which, in principle at least, was as inconsistent, if inconsistent at all, with the doctrine that he held in the Defiance Water Company Case as the Wellston Case is inconsistent with it. And it is stated that, upon a reargument, his attention was called to the Wellston Case. However that may be, he gave formal consideration to this particular question, and decided

it. The following extract from Judge Severens' opinion in the case above referred to (Defiance Water Co. v. City of Defiance et al. [C. C.] 90 Fed. 753) shows how explicitly he held this ordinance to be valid:

"The contract was, in terms, for a period of 30 years; but as its stipulations are to be performed annually, and it is separable by years, I think the contract is valid for 20 years from its date."

So, also, the decision of the Supreme Court of Ohio, in an action brought, under section 1777 of the Revised Statutes of Ohio of 1906, by the city solicitor of Defiance against this plaintiff, respecting this ordinance, while not technically, as I view the doctrine of res judicata, absolutely determining that this is a question which can no longer be raised by the city of Defiance, yet, at the same time, upon a fair consideration of the decision in that case, ought to have that effect. Now, what is section 1777? It is a section which authorizes a city solicitor to file a petition in the nature of a bill in equity—seeking to enjoin what? To enjoin the misapplication of funds of a municipal corporation, or the abuse of its corporate powers, or the execution or performance of any contract made in behalf of the corporation in contravention of the laws or ordinances governing the same, and so on. That is to say, the city solicitor, in that instance representing the city, and for the time being supplanting the council, prosecutes the action, not alone to attack the ordinance or to prevent the execution of an invalid ordinance or contract, but to prevent the misapplication of funds of the corporation. Now, the Supreme Court, in deciding this case, said that the statute of limitations barred the action; it being an action under a statute which had a limitation of 10 years. That is the statement in the syllabus. It is not quite all that was said in the opinion. It is undoubtedly true that the substantive law declared by the case of Defiance Water Co. v. City of Defiance, 68 Ohio St. 520, 67 N. E. 1052, is all contained within the four corners of the syllabus. But, after all, we may look to the opinion, as the decree says we must, to note what were the grounds of the conclusion. What was the view of the court?

We must remember that there was an undertaking, in the petition in that case, to restrain the city counsel from paying, or taking any proceedings whatever toward the payment of, a claim for hydrant rental; that is, the claim just then due and now sued upon, as well as the other claims thereafter to become due, including the claims upon which this action now before us is brought. That is what they were seeking to do in that case. They were seeking to prevent the misapplication of funds, the liability for which was just then arising, growing out of a contract that was entered into more than 10 years before. Now, what does that court say? "This suit was begun January 4, 1898, 10 years, 4 months, and 17 days after the cause of action accrued. Meantime the water company constructed the waterworks at great expense"—that has nothing to do with the statute of limitations—"and, as it appears from the pleadings, the defendant in error accepted the waterworks under the alleged contract, took possession of and used the hydrants as provided, and paid the water rent therefor for several years, without any question being raised as to the legality of

the contract or the liability of the city." That has nothing to do with the statute of limitations. "In fact, although there has been some contention over the validity of the contract since 1896, the defendant in error has used the hydrants and paid the water rents until about the time the present suit was begun. It is a stale equity, if any, which it is now sought to assert. It is true that the object of this action is to restrain the payment of a demand under the contract which only accrued in 1897, and to restrain the payment of any other or further claims; but the ground for the relief sought, and the sole pretext for refusing to pay for that which the plaintiff below has had and enjoyed, is the alleged invalidity of the contract which it entered into on August 17, 1887, a ground which it might have asserted, and which it was its duty to assert, if at all, long before it did so in this action."

Now, what is the effect of that, which is undoubtedly the well-considered opinion of the Supreme Court of Ohio in this case, and what relation does it have to this case and to the defense made here that this ordinance is invalid? We have the Supreme Court declaring, where a city has invoked a statute—one of the most important laws on our statute books, the everlasting preserver of the rights of the people of the municipality, the law that can be invoked by any citizen if the city solicitor refuses to act—that the invoking of that law against the payment of money under this contract will not be efficacious. The Supreme Court says the council may, without let or hindrance, and without interference from any tribunal on earth, pay, year after year, any and all of these claims as they accrue. To declare now that, because the right of action exists, therefore any defense that might ever have been made to it exists, and that the invalidity of that ordinance may be pleaded and proved and claimed so as to prevent the payment of these claims, I do not believe is warranted under this decision of the Supreme Court. I do not think that, rightly interpreted, the Supreme Court meant that the council had the right to refuse to pay, or can now be prevented by any sort of judicial intervention from paying, all of these claims as they severally accrued and matured.

Now, what is the defense? There is a word to be said, however, at this stage, on the question of estoppel—a very disturbing question always when applied to a municipal corporation. Of course, it goes without saying that an estoppel cannot arise when a municipal corporation labors under an intrinsic infirmity to deal with the subject-matter, or to contract to do something that is manifestly and in itself injurious, or that is malum prohibitum. Certainly the supplying of water is not malum prohibitum. The subject-matter is a thing which the council—the city—had a right, under the law, to deal with. The manner of its dealing with it is another question. Now, if it has dealt with the subject in a manner not provided by law, and the question of estoppel is asserted and made, then we come to the serious difficulty of distinguishing between estoppel which, in good conscience, and having regard to the duty of the person who contracted, ought to be effective, and that kind of estoppel which public policy demands should not be permitted to make an invalid contract valid. I think

that the very clear and defined principle, which is put with unmistakable lucidity in Tone v. Columbus, 39 Ohio St. 281, 48 Am. Rep. 438, is against the proposition that estoppel does not arise in a case like this; and, without going into details about it, I think that the underlying principle in the case of City of Mt. Vernon et al. v. State of Ohio, ex rel. Berry, 71 Ohio St. 428, 73 N. E. 515, 104 Am. St. Rep. 783, is against the contention that estoppel cannot arise in a case like this. In that case it was an unconstitutional act which was the basis of the ordinance attacked. Ordinarily the things that are done by virtue of an unconstitutional act are void. One is not in any better position because he does a thing in consequence of an unconstitutional act than if he does it in violation of any other law. Facts, of course, are often different. Equities are sometimes different; but the rule of law as applied to them is the same. So that I think the city is estopped from denying now the validity of this contract, under all the facts of the case.

Now, we come to this defense which is made. It seems to be recognized by counsel on both sides that the action must stand alone upon the contract. There is no question, and can be no question, of the quantum meruit. And, if the plaintiff is entitled to recover at all, he is entitled to recover all of the contract price. There is to be no diminution by reason of any failure to comply with the contract, except such a diminution as wipes out the whole of the claim made. The defense made to this does not impress me, either with its equity or with its soundness as a legal proposition. These waterworks were put in, certainly, in general compliance with the contract; and, so far as we know, the city continued to use the water without any official complaint, at least for some years. At any rate, it paid, year after year, the water rentals, until, for some reason, a contention arose, probably about the quality of the water. That there was a substantial compliance with the contract originally we must conclude. Now, then, what were the rights of the city? If the contract was not complied with, if it was not a contract at all, the city could arbitrarily end it. If it was a contract, it had the same remedy, if the contract was not complied with, that a natural person would have. It probably could have rescinded, and, under the terms of the contract, it could have forfeited certain rights which the water company was given by the contract. Whether or not a technical forfeiture could arise under that provision of the contract is not very important in this connection. It at least would have furnished an absolutely stable foundation upon which to rest a claim to a rescission of the contract if it was not complied with. In other words, the city was never incapable of asserting any legal rights growing out either of the fact that the contract itself was invalid or that its terms were not complied with.

It is claimed that the water company failed to supply water according to the contract, and to do certain other things, and that its failure to thus fully and always comply with these terms of the contract justified a termination of the rights of the plaintiff against it, as to all of these years during which it furnished water. When we come to this phase of such a case as this, we apply the same rules

of justice to a municipal corporation as we apply to a natural person; and, under the contract in this case, and the facts that appear, the undisputed facts in this case, it would certainly be against good conscience to say that, either under the contract or as a matter of general right, a municipal corporation could say that it could have this water and pay nothing for it. But, so far as the contract itself undertakes to define the methods by which these rights of the city shall be enforced, not one of them, as I view it, has been complied with by the city. The city has undertaken, in no instance, effectively to preserve its rights under the forfeiture clause. I appreciate the legal difficulties in which the city found itself. It was to a certain extent between two fires, or, rather, it halted between two opinions, and it did not desire to finally, by its own conduct, determine its own rights in respect to one phase or aspect of its case, by taking a certain inconsistent attitude with respect to another phase or aspect of the case. In 1899, some two years after the cause of action in this case arose, they undertook to serve a notice upon the water company, which is the only notice that was served upon it, and upon which it is sought to predicate the right to forfeit. It is enough to say about that that if the very drastic results which, under a forfeiture, arise for the benefit of the person who possesses the right of forfeiture, this is certainly not such a notice as could have such an effect; and it was not intended, in any event, to meet such a case as the city sought to meet by that notice.

I think that it is fair to say that if the case was submitted to the jury and that was the only question in it, and if the jury found that there was a total failure to supply good, wholesome water, suitable for all domestic and manufacturing uses, the court would have set such a verdict aside, resting on such a foundation, because I think the conclusive weight of the testimony is that, for most of the time, there was good water, certainly as good water as anybody expected to get there, certainly the kind of water which the municipal corporation, when it made this contract, expected to get, and that it got this water during the greater part of the year. I am not saying that the quality of the water which, during a part of the year, was served to the city, would not have justified the city in rescinding this contract, or in taking some other legal action that would have resulted in either an ending of the contract, or a compulsion upon the waterworks company to do something more. I am not at all minimizing the importance of that circumstance as affecting the rights and duties of these parties; but the forfeiture of the hydrant rentals was to be a temporary thing, and right to them was to be revived if the water came within the terms of the contract; and I say that, as a matter of fact, it did from time to time come within the terms of the contract. I say that, giving to the provision for forfeiture the greatest weight that could possibly be attached to it.

As to none of the other things does there appear to be any such notice as would justify the declaration of a forfeiture. There was never any declaration of forfeiture. Certainly it does not arise unless declared, either by the party who has a right to declare it or by

a court, when called upon in a proper proceeding to do so, and this particular document was neither a notice nor a declaration of forfeiture. Now, I think that I have covered all the salient points, imperfectly, but as fully as the court deems them of consequence in determining the question that is now before it.

The motion to direct a verdict in behalf of the plaintiff will be sustained. I suppose that it is unnecessary for the jury to retire for that purpose. Counsel can compute the amount of the verdict. The court directs a verdict, then, in favor of the plaintiff, for the amount of the claim, with interest computed to the first day of the term, which is accordingly done.