BAXTER, TRUSTEE, APPELLANT, *v.* VILLAGE OF
MANCHESTER, APPELLEE.

(Decided January 19, 1940.)

*Mr. O. E. Young* and *Mr. C. S. DeMint,* for appellant.
*Mr. A. H. Holderness* and *Messrs. Blair & Blair,* for appellee.

GILLEN, J. Plaintiff instituted this action in the Court of Common Pleas of Adams county, Ohio, to recover from defendant the sum of $18,317.20, which amount is claimed to be due for hydrant rentals from March 20, 1929, to March 20, 1934. The issues were submitted to the trial court without the intervention of a jury, resulting in a judgment for defendant. The cause is before this court on an appeal on questions of law.

The amended petition alleges that the village of Manchester on the 27th day of June, 1927, granted a franchise to H. L. Fuller pursuant to the provisions of Ordinance No. 95 duly passed by the village council, the title of which ordinance reads:

"Granting a franchise to H. L. Fuller to construct, maintain and operate waterworks plant in the village of Manchester, Adams county, Ohio, and fixing rates to be charged for operating and furnishing such water to said village, its citizens and inhabitants."

A copy of the ordinance is attached to the petition and made a part thereof. The franchise was later assigned by H. L. Fuller to The Manchester Water Company. The petition further alleges that on the 19th day of July, 1928, the village, by and through its mayor

and clerk, who were duly authorized by the council of the village to do so, entered into a written contract with The Manchester Water Company, by the terms of which sixty-one fire hydrants were to be maintained by the company as provided in the original franchise. By the terms of the contract the village agreed to pay for the use of water for fire protection the sum of $60 per year for each of the sixty-one fire hydrants, payable semi-annually on the 20th day of March and the 20th day of September. On the 1st day of December, 1929, The Manchester Water Company completed the construction of the waterworks system and the same was accepted by the defendant. Ever since that date water has been furnished the village and inhabitants thereof in accordance with the provisions of the franchise and contract. Pursuant to the provisions of the contract the village has made payments for the use of the fire hydrants as follows:

| | |
|---|---:|
| January 8, 1931, by cash | $1,830 |
| August 5, 1931, by cash | 800 |
| August 8, 1931, by cash | 1,030 |
| Total | $3,660 |

Section XI of the franchise ordinance reads:

"The grantee and the village of Manchester shall, from time to time, fix rates and charges covering the cost of water and its delivery to the village of Manchester and its inhabitants, both for public and private use, and within 30 days hereafter shall prepare and promulgate rates as in this section provided. It being mutually agreed and understood that if the rates and conditions can not be mutually agreed upon that either party may appeal to the Public Utilities Commission of Ohio to hold necessary hearing covering the rates charged or proposed to be charged and that such rates shall be based upon the conditions governing said hearings and that the net earnings, after providing for all

costs of operation, maintenance and depreciation, shall show a net profit to the grantee of not less than 8 per cent upon the agreed sum of $74,000, plus the cost with 10 per cent added of any and all additions to the plant, as in the next section provided.''

Section XX, in so far as it relates to fire hydrants, reads:

''The rates for water for fire protection and domestic use are as follows: Fire hydrants to be paid for by municipality at the rate of $60 per year per hydrant. * * *

''Provided: That the above rates and charges for water to run and apply only for one year from date of this franchise and future rates to be determined as provided in Section XI of this franchise.''

The plaintiff in this action acquired by purchase all property rights and assets of The Manchester Water Company and it is admitted that he is the real party in interest. Defendant filed an answer and cross-petition in which it is claimed that plaintiff violated the provisions of the franchise ordinance in several respects. The answer sets forth the averment that the contract upon which this action is based was not properly executed and for that reason is of no force and effect. It was executed under authority of Ordinance No. 103 which was adopted by the village council on the 17th day of July, 1928, and published for the first time on the 2nd day of August, 1928. Ordinance No. 103 is attached to defendant's answer and made a part thereof. The material part of this ordinance reads:

''An ordinance providing for the use of water in the village of Manchester, Adams county, Ohio, and establishing rates therefor.

''Be it ordained, by the Council of the village of Manchester, Adams county, Ohio.

''Section 1. That the time of completion and when The Manchester Water Company shall be obligated to commence furnishing water for public and private con-

sumption in said village, and environs shall be and is hereby extended to November 1, 1928.

"Section 2. That the rates as heretofore established under the franchise granted said water company by the village of Manchester, be, and the same are hereby extended for a period of ten years from time rates go into effect under the terms and conditions in said franchise set forth.

"Section 3. That the mayor and clerk of said village of Manchester, Ohio, be, and they are hereby authorized to contract with said water company for the use of water for fire protection and on the basis and for and in consideration of the rates established therefor in said franchise heretofore granted as in Section 2, herein provided."

The answer further avers that on the 19th day of July, 1928, being but two days from and after the passage of Ordinance No. 103 and before the ordinance had become effective, ten days having not then elapsed, the village entered into the contract with The Manchester Water Company and that by reason thereof the contract is void and of no effect.

Whether under such circumstances the village can enjoy and use the fire hydrants and water supply and at the same time avoid liability and escape payment therefor is the question presented for determination. The trial court in a written opinion reached the conclusion that since the parties failed to comply with all statutory requirements authorizing municipalities to enter into contracts plaintiff cannot recover in this action. The principal difficulty seems to be that the agreement was entered into before the publication of Ordinance No. 103, and that there is an apparent delegation of power to the mayor and clerk to enter into the contract on behalf of the municipality.

The basic rights and duties of the contracting parties are fixed and determined by the original franchise ordinance adopted on the 27th day of June, 1927. By

the terms of this ordinance it was incumbent upon the owner of the franchise to construct and maintain a water system in accordance with the plans and specifications adopted and approved. The ordinance further provided the rates to be in force during the first year the plant was in operation and that thereafter the rates would be adjusted from time to time between the parties. The provisions of Ordinance No. 103 sought to carry out this arrangement between the parties and the contract was executed pursuant thereto. It is not claimed that the contract altered the terms of Ordinance No. 103, or that the provisions thereof violated the terms of the franchise ordinance. It is claimed, however, that the payments made by the village were for the year's rental provided for in the franchise ordinance and that they were not made pursuant to the contract executed by the mayor and clerk. Section 4 of Article XVIII of the Ohio Constitution provides that "any municipality may acquire, construct, own, lease and operate within or without its corporate limits, any public utility the product or service of which is or is to be supplied to the municipality or its inhabitants, and may contract with others for any such product or service." It is said in 16 Ohio Jurisprudence, 653, Section 75, that the principles of estoppel apply to municipal corporations as well as to individuals. The true rule seems to be that the application of the doctrine of estoppel *in pais* to municipal corporations is confined to cases in which they have the power to act or contract. In such cases they may estop themselves by conduct, silence or acquiescence in the same way as natural persons. But they may not do those things which are *ultra vires* and thereby estop themselves from alleging their want of power or denying the validity of the things so done. The Supreme Court of Ohio in the case of *City of Mt. Vernon* v. *State, ex rel. Berry,* 71 Ohio St., 428, 73 N. E., 515, 104 Am. St. Rep., 783, said:

"Where a municipal corporation has entered into a

contract with an individual under and by virtue of a statute which is unconstitutional and the subject-matter of the contract is not *ultra vires,* illegal or *malum prohibitum,* and the facts are such, as against the corporation, as would estop an individual from setting up as a defense the unconstitutionality of the statute, the municipal corporation will also be so estopped.''

In the case at bar there can be no doubt but that the village of Manchester had full power and authority to enter into a contract for the furnishing of its water supply since such authority is conferred by the Constitution of Ohio, Section 4, Article XVIII. Having exercised its power by ordinance in this respect the village cannot now escape its liability arising under the provisions of that ordinance. In the case of *Defiance Water Co.* v. *City of Defiance,* 68 Ohio St., 520, 67 N. E., 1052, Judge Davis, speaking for the court, said:

''This suit was begun January 4, 1898, ten years, four months and seventeen days after the cause of action accrued. Meantime the water company constructed the waterworks at great expense; and as it appears from the pleadings, the defendant in error accepted the waterworks under the alleged contract, took possession of and used hydrants as provided, and paid the water rent therefor for several years, without any question being raised as to the legality of the contract or the liability of the city. In fact, although there has been some contention over the validity of the contract since 1896, the defendant in error has used the hydrants and paid the water rents until about the time the present suit was begun. It is a stale equity, if any, which it is now sought to assert. *Kellogg* v. *Ely,* 15 Ohio St., 64.''

It is true that in that case the suit was brought by the city solicitor on behalf of the municipality to enjoin the council from paying the water rental and that the action was one in equity. However, the facts in the case under consideration are very similar to those be-

fore the court in the case of *Defiance Water Co.* v. *City of Defiance, supra,* and must be subjected to the same rules of law.

The syllabus of the case of *McGonigale, Recr.,* v. *City of Defiance,* 15 O. F. D., 100 (140 F., 621), seems to be a complete answer to the questions here presented and we quote it as follows:

"1. In an action against a municipal corporation for rentals on a contract to supply water, it is unnecessary for plaintiff to make specific, formal and technical proof of complete performance on its part of all the terms of the contract, if it appear that there was a substantial compliance therewith.

"2. A municipality under contract with a water company, availing itself of the services thereof for a number of years, will not be permitted, in an action by the company to recover rentals, to plead a technical breach or forfeiture, of which it did not take advantage at the time, if the evidence shows a substantial, satisfactory performance by the company.

"3. A contract for supplying water for a period of thirty years between a water company and a municipal corporation, not ratified by a vote of the people as required by the statute governing such contracts when made for a period longer than twenty years, is a divisible contract and will be regarded as valid for the length of time it is permitted to endure by the municipal authorities.

"4. A municipal corporation which has made a contract providing for services by a water company and a payment of rentals from year to year, and which has not undertaken to rescind or declare the same forfeited, will be estopped to set up the illegality thereof under a statute which provides for the ratification by a vote of the electors of all such contracts entered into for longer than a certain period.

"5. The principles of estoppel will apply to the contract of a municipality relative to its water supply,

inasmuch as contracts of this nature are neither illegal *per se* nor *malum prohibitum.*"

It is urged that plaintiff is not entitled to the benefits arising under the doctrine of estoppel since he did not plead estoppel. The general rule in this state is to the effect that, where there is opportunity, the facts out of which an estoppel is claimed to arise must be pleaded. As stated in 16 Ohio Jurisprudence, 904, Section 251, however, one of the most difficult phases of this question of the necessity of pleading estoppel arises when the matter of estoppel forms a part of the plaintiff's affirmative case. It is stated in 16 Ohio Jurisprudence, 902, Section 250, that:

"Ordinarily, the court will look to the pleadings to determine whether the constituent elements of an estoppel appear there, since such elements must appear with respect to pleading as well as evidence.

"There are certain well-defined exceptions to the rule that an estoppel must be pleaded. An estoppel may be relied upon as a defense, although not pleaded, where the facts pleaded and in evidence show an estoppel to arise."

In the instant case the petition sets forth the material parts of the contract relied upon for recovery and alleges that defendant accepted the benefits of the contract and made payments thereon. Defendant in its answer admitted the execution of the contract but averred that the contract was void and of no effect by reason of certain facts set forth in the answer. Under such circumstances additional pleadings could serve no useful purpose. The respective claims of the parties are definitely set forth in the pleadings, and the situation presented is one in which the doctrine of estoppel clearly applies.

In this action no motion for a new trial was filed and for that reason the cause will not be reviewed on the weight of the evidence. Under such circumstances and in view of the fact that defendant filed an answer in

which certain defensive matter was averred the cause will be remanded for further proceedings.

*Judgment reversed and cause remanded.*

BLOSSER, P. J., and McCURDY, J., concur.