## Cincinnati v. Ohio Council 8, AFSCME
### Case No. C-880710
### Hamilton County, (1st)

**Decided January 31, 1990**
[Cite as 1 AOA 11]

*Richard A. Castellini, City Solicitor, and Mark C. Vollman, Esq., Room 214, City Hall, Cincinnati, Ohio 45202, for Plaintiff-Appellant,*

*Kirschner, Weinberg & Dempsey, Craig Becker, Esq., and Larry Weinberg, Esq., 1615 L Street, N.W. 1360, Washington, D.C. 20036, and Ronald Janetzke, Esq., 741 East Broad Street, Columbus, Ohio 43205, for Defendants-Appellees.*

*PER CURIAM.*

This cause came on to be heard upon the appeal, the transcript of the docket, journal entries and original papers from the Court of Common Pleas of Hamilton County, Ohio, the transcript of the proceedings, and the briefs and arguments of counsel.

In 1983, plaintiff-appellant, the City of Cincinnati, filed a declaratory judgment action which sought a determination concerning the legality of a provision in the collective-bargaining agreement between the City and defendants-appellees, Ohio Council 8 and Locals 190, 223, 240, 250, 1543 and 3119, American Federation of State, County and Municipal Employees AFL-CIO. The trial court granted the defendants' motion for summary judgment on the ground that the City's claim was barred by the doctrine of equitable estoppel, and the City appealed.

On appeal, the City contends, in a single assignment of error, that the trial court improperly granted summary judgment on behalf of the defendants. We agree.

Certain city employees are covered by a collective-bargaining agreement between the City and the defendants. Article XLI of that agreement provides that the City agrees to check off employee deductions to Public

Employees Organized for Political Legislative Equality (PEOPLE). The PEOPLE fund is used to support individual partisan political candidates. The City refused to continue checking off for this fund, contending that to do so would violate Article V, Section 4 of the City's charter, which provides that no person in the administrative service shall contribute to any political party or candidate. The City then filed this action seeking the following relief:

A declaration that Charter Article V, Section 4, supersedes the provision of Article XLI of the Agreement and that the City is, therefore, prohibited from enforcing the provisions of Article XLI; that the City being bound to comply with Charter Article V, Section 4, must not deduct contributions which go to individual political candidates.

After announcing its decision to refuse to check off for the PEOPLE fund, the City negotiated a new agreement with the defendants. This agreement became effective on August 30, 1981, and contained the same provision for checking off employee deductions to the PEOPLE fund as the original agreement.[1] The defendants argue that due to the City's acceptance of the check-off provision in the new agreement, the doctrine of equitable estoppel bars the City's claim that the check-off provision is unlawful.

The doctrine of estoppel is applicable to municipal corporations where they have the power to act or contract. *Baxter v. Manchester* (1940), 64 Ohio App. 220, 28 N.E.2d 672. In such cases, municipalities may estop themselves by conduct, silence or acquiescence. *Id.* However, where the subject matter is *ultra vires,* illegal, or *malum prohibitum,* the doctrine of estoppel may not be applied to municipal corporations. *Legion Post No. 521 v. Shadyside* (Nov. 30, 1983), Belmont App. No. 83-B-8, unreported; *Horvits Testamentary Trust v. Cleveland* (May 21, 1981), Cuyahoga App. No. 43206, unreported.

The City contends that the check-off provision in the agreement is illegal or *malum prohibitum* because it conflicts with its charter. It concludes, therefore, that the doctrine of estoppel is not applicable to this case despite the City's acceptance of the new agreement between parties.

We agree that the City may not be precluded from bringing this action on the basis of equitable estoppel. Accordingly, we find that

summary judgment was improperly granted on that basis.

The agreement between the parties that calls for the City to check off funds for PEOPLE clearly conflicts with the City's charter which provides that people in the administrative service shall not contribute to any political party or candidate. We must determine, therefore, which provision has precedence over the other provision.

The Supreme Court of Ohio has recently held in *Rocky River v. State Emp. Relations Bd.* (1989), 43 Ohio St. 3d 1, 539 N.E.2d 103, paragraph two of the syllabus, the following:

The Ohio Public Employees' Collective Bargaining Act, R.C. Chapter 4117, and specifically R.C. 4117.14 (I), are constitutional as they fall within the General Assembly's authority to enact employee welfare legislation pursuant to Section 34, Article II of the Ohio Constitution. Section 3; Articles XVIII of the Ohio Constitution, the home-rule provision, may not be interposed to impair, limit or negate the Act.

Section 3, Article XVIII of the Ohio Constitution provides that "municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." The collective- bargaining law of the state of Ohio has previously been determined to be of general nature. *State, ex rel. Dayton Fraternal Order of Police Lodge No. 44 v. State Emp. Relations Bd.* (1986), 22 Ohio St. 3d 1, 488 N.E.2d 181. The home rule charter of the City is, therefore, constitutionally limited to powers not in conflict with the general law of collective bargaining under R.C. 4117. Furthermore, the City's charter may not be interposed against the general law to impair, limit or negate the Ohio Public Employees' Collective Bargaining Act. *See Rocky River, supra.*

R.C. 4117.03 (A) (4) provides that public employees have the right to bargain collectively with their employer "to determine wages, hours, terms and other conditions of employment." Subjects appropriate for collective bargaining include "[a]ll matters pertaining to wages, hours, or terms and other conditions of employment." R.C. 4117.08 (A). The employer is not required to bargain on subjects reserved

to the management and direction of the governmental unit except as affect wages, hours, terms and conditions of employment. R.C. 4117.08 (A).

Employee check-off deductions for a political fund are not matters "pertaining to wages, hours, or terms and other conditions of employment." Therefore, these check-off provisions are not appropriate subjects for collective bargaining, and public employees have no "right" to bargain collectively with their employer on these matters.

R.C. 4117.09 provides that the written collective-bargaining agreement must contain a provision that authorizes the employer to deduct "periodic dues, initiation fees, and assessments of members of the exclusive representative upon presentation of a written deduction authorization by the employee." The agreement may also contain a provision that requires as a condition of employment that "employees in the unit who are not members of the employee organization pay to the employee organizationa fair share fee." R.C. 4117.09 (C). However, nothing in this section permits the inclusion ofa deduction for political funds in the collective-bargaining agreement.

The City's charter prohibits employees in the administrative service from contributing to any political party or candidate. This home-rule provision does not "impair, limit or negate" the Ohio Public Employees' Collective Bargaining Act because R.C. Chapter 4117 does not give public employees the right to collectively bargain the matters covered by this provision.

We, therefore, conclude that Article V, Section 4 of the City's charter supersedes the provision of Article XLI of the collective-bargaining agreement, and that the City is bound by its home-rule charter. The City may not deduct employee contributions to political candidates in contravention of its charter.

Accordingly, we reverse the judgment of the trial court, and remand the cause with instructions to enter judgment consistent with this decision and to resolve the remaining issue of costs.

SHANNON, P.J., DOAN and UTZ, JJ.

---

[1] According to the defendants, the City has negotiated three new agreements through August 1988, each containing the identical check-off provision now in dispute.