OPINION
{¶ 1} Plaintiff-appellant, Percy Squire Co., L.L.C., appeals from a Mahoning County Common Pleas Court judgment granting a motion to dismiss in favor of defendant-appellee, the City of Youngstown.
 {¶ 2} This case involves the sale of real property known as the Wick Building, which is owned by appellee. Appellant rented space in the building and made substantial leasehold improvements as a tenant. A dispute arose between the parties with respect to appellant's failure to pay rent on time and appellee's failure to honor a promise to sell the building to appellant. Appellee filed several actions against appellant and appellant filed several counterclaims in response. Throughout the litigation, the parties continued to negotiate the sale of the Wick Building. In resolution of the litigation, the parties agreed that appellant would pay what it owed to appellee when it purchased the building. Appellee also required appellant to consent to judgments in the pending cases.
 {¶ 3} On September 23, 2004, the assistant law director provided appellant with a draft purchase agreement. On October 6, 2004, Youngstown City Council passed Ordinance 04-228, which authorized the Board of Control (BOC) to negotiate the sale of the Wick Building with all interested parties and to enter into an agreement to sell the building. Thereafter, the assistant law director provided appellant with a new purchase agreement. If appellant was satisfied with the new terms, it was instructed to execute the agreement so the agreement could be submitted to the BOC for execution. Appellant executed the purchase agreement and subsequently deposited money with a title agency as instructed by appellee. Pursuant to the purchase agreement, appellant also obtained financing for the money needed to close the transaction.
 {¶ 4} Following appellant's submission of the purchase agreement, the BOC did not execute the agreement despite appellant's partial performance in depositing money and obtaining financing. Therefore, on November 23, 2004, since the BOC did not execute the agreement, appellee opened up the sale to other bidders.
 {¶ 5} On December 9, 2004, appellant filed a complaint for temporary and preliminary injunctive relief, specific performance and damages against appellee and "John Doe." Appellant based its claims against appellee on two alternative theories of contract: (1) appellant and appellee had entered into a binding contractual agreement, and (2) an implied contract arose from the doctrines of promissory estoppel/detrimental reliance. The complaint also set forth a claim for relief against defendant "John Doe" for tortious interference with the contract. The court issued a temporary restraining order prohibiting appellee from announcing a prevailing bidder for the Wick Building. Appellee filed a Civ.R. 12(B)(6) motion to dismiss appellant's claims against it. A magistrate determined that appellee's motion to dismiss should be granted. Appellant filed objections to the magistrate's decision, but the court overruled its objections. The trial court subsequently adopted the magistrate's decision. Appellant filed a timely notice of appeal on March 3, 2005.
 {¶ 6} Appellant raises one assignment of error and presents three issues for review. We will discuss the third issue first because its determination affects the other two issues. Appellant's sole assignment of error states:
 {¶ 7} "THE TRIAL COURT ERRED IN GRANTING THE MOTION TO DISMISS FILED BY APPELLEE, CITY OF YOUNGSTOWN."
 {¶ 8} The standard of review for a Civ.R. 12(B)(6) motion to dismiss requires the appellate court to independently review the complaint to determine if the dismissal was appropriate. Ferreriv. The Plain Dealer Publishing Co. (2001), 142 Ohio App.3d 629,639, 756 N.E.2d 712.
 {¶ 9} A motion to dismiss for failure to state a claim upon which relief can be granted is a procedural motion that tests the sufficiency of the complaint. State ex rel. Hanson v. GuernseyCty. Bd. of Commrs. (1992), 65 Ohio St.3d 545, 548,605 N.E.2d 378. In order to dismiss a complaint for failure to state a claim upon which relief can be granted, the court must find beyond doubt that appellant can prove no set of facts warranting relief after it presumes all factual allegations in the complaint are true, and construes all reasonable inferences in appellant's favor. State ex rel. Seikbert v. Wilkinson (1994),69 Ohio St.3d 489, 490, 633 N.E.2d 1128.
 {¶ 10} Civ.R. 8(A) sets forth requirements for a complaint and provides in pertinent part:
 {¶ 11} "A pleading that sets forth a claim for relief * * * shall contain (1) a short and plain statement of the claim showing that the party is entitled to relief, and (2) a demand for judgment for the relief to which the party claims to be entitled."
 {¶ 12} When determining whether a complaint states a claim, the court must liberally construe the pleadings. Miller v. Med.Economics Consultants Co., Inc., 2d Dist. No. 19177, 2002-Ohio-4972; Civ.R. 8(F).
 {¶ 13} Appellant's third issue presented for review asks, "WHETHER APPELLANT STATED A CLAIM UPON WHICH RELIEF COULD BE GRANTED." As stated above, appellant bases its claim against appellee on two alternative contract theories. Each will be addressed in turn.
 {¶ 14} Appellant argues that its complaint alleged: (1) a meeting of the minds as to all material terms under which appellee promised to sell and appellant promised to buy the Wick building, (2) the agreement was reduced to writing in the form of a detailed purchase agreement and updated draft, and (3) appellee's refusal to perform the agreement entitled appellant to damages for breach or specific performance. Thus, it claims its complaint alleged all elements necessary to sustain a cause of action for breach of contract.
 {¶ 15} Appellant further maintains that nothing in the city charter, ordinances, or final purchase agreement support the finding that the agreement had to be executed in order to be binding. Appellant argues that although the BOC may not have taken the ministerial step of "executing" the purchase agreement, the complaint sufficiently pled that appellant and the BOC had entered into a purchase agreement. Construing the facts most strongly in its favor, appellant asserts that it and the BOC had reached a meeting of the minds as to all material terms of the deal and a contract was formed. For instance, appellant points to the law director's letter on October 21, 2004, which indicated that the city's law department had made all material changes it desired and that only "execution" would remain should the final purchase agreement be acceptable to appellant.
 {¶ 16} Absent an express contract, appellant has not alleged facts which, if proved, would establish that the city owed any duty to sell the Wick Building to him.
 {¶ 17} Where one of the parties to a potential contract is a municipal corporation, the contract formation or execution may only be done in a manner provided for and authorized by law.Ohio Power Co. v. Village of Mingo Junction, 7th Dist. No. 04-JE-3, 2004-Ohio-4994. "Furthermore, contracts, agreements, and/or obligations of a municipality must be made and entered into in the manner provided for by statute or ordinance and cannot be entered into otherwise." Id. citing Wellston v.Morgan (1901), 65 Ohio St. 219, 62 N.E. 127.
 {¶ 18} The Ohio Supreme Court explained the rationale for this rule as follows:
 {¶ 19} "`We think there is no hardship in requiring them, and all other parties who undertake to deal with a municipal body in respect of public improvements, to investigate the subject, and ascertain at their peril whether the preliminary steps leading up to contract, and prescribed by statute, have been taken. No high degree of vigilance is required of persons thus situated to learn the facts. They are dealing with public agencies whose powers are defined by law, and whose acts are public transactions, and they should be charged with knowledge of both. If the preliminary steps necessary to legalize a contract, have not been taken, they can withdraw from the transaction altogether, or delay until the steps are taken. The citizen and taxpayer, in most instances, unless directly affected by the improvement, has but a remote, contingent, and inappreciable pecuniary interest in the matter, and should not be required to personally interest himself about its details. * * *
 {¶ 20} "`* * *
 {¶ 21} "`An occasional hardship may accrue to one who negligently fails to ascertain the authority vested in public agencies with whom he deals. In such instances the loss should be ascribed to its true cause, — the want of vigilance on the part of the sufferer, and statutes designed to protect the public should not be annulled for his benefit.'" Lathrop v. City ofToledo (1966), 5 Ohio St.2d 165, 173, 214 N.E.2d 408, quotingMcCloud Geigle v. City of Columbus (1896), 54 Ohio St. 439,452-53, 44 N.E. 95.
 {¶ 22} Here, appellant did not enter into an express contract with appellee because the terms of the Youngstown City Charter and Ordinance 04-228 were not complied with.
 {¶ 23} The Youngstown City Charter § 110 provides, in pertinent part:
 {¶ 24} "For the purpose of executing contracts and agreements on behalf of the City, there is hereby created a Board of Control, consisting of the Mayor, the Director of Law and Director of Finance, of which the Mayor shall be Chairman and the Director of Finance the Secretary."
 {¶ 25} Additionally, Youngstown City Ordinance 04-228 authorizes the BOC, "TO NEGOTIATE WITH ALL INTERESTED PARTIES REGARDING THE PURCHASE AND SALE OF THE WICK BUILDING AND TO FURTHER AUTHORIZE THE BOARD OF CONTROL TO ENTER INTO A PURCHASE AGREEMENT FOR THE PURCHASE AND SALE OF THE WICK BUILDING."
 {¶ 26} Youngstown City Charter § 110 along with Ordinance 04-228 clearly establish that in order to have a valid contract with the city to purchase the Wick Building a buyer would have to have an agreement executed by the BOC. This appellant does not have.
 {¶ 27} The terms the parties agreed to in the purchase agreement were not legally binding until executed by the BOC. Appellant contends that a contract was formed because it and the BOC had reached a meeting of the minds. However, this case deals with a municipal entity and a private business. Therefore, we are guided by the Ohio Supreme Court's holding in Lathrop.
Appellant's arguments may have been valid if two private companies were negotiating a deal, but compliance with the applicable charter provision and ordinance are requirements for a contract to be formed with the city. The BOC had the sole authority to finalize the agreement to make it a legally binding contract. Since the BOC did not execute the agreement, it did not constitute a binding contract.
 {¶ 28} Appellant's second theory for recovery was that of promissory estoppel/detrimental reliance. Appellant argues that it pled sufficient facts to state a prima facie case of promissory estoppel. Appellant asserts that promissory estoppel may be applied against a municipality in the context of contractual formation. It cites Pilot Oil Corporation where the Tenth District held:
 {¶ 29} "Estoppel may be imposed in contract situations where the subject matter of a contract is not illegal or ultra vires. See Baxter v. Manchester (1940), 64 Ohio App. 220,28 N.E.2d 672. Further, estoppel may apply where a municipality made a representation, which was within its power to make and which induced reliance." Pilot Oil Corp. v. Ohio Dept. of Transp.
(1995), 102 Ohio App.3d 278, 283, 656 N.E.2d 1379.
 {¶ 30} Appellant contends that the sale of the Wick Building cannot be considered a governmental function. In addition, appellant maintains that the purchase agreement entered into between the parties is not ultra vires. Appellant notes that the trial court implied in its judgment entry that the complaint must be dismissed because appellant's reliance was not reasonable. Appellant argues that its complaint sufficiently alleges a claim for promissory estoppel, and it should have been afforded the opportunity to present evidence as to whether or not appellee's conduct justified its reliance. Appellant maintains that whether or not its reliance was reasonable is a question which should be left to the finder of fact after all the evidence has been presented.
 {¶ 31} The Ohio Supreme Court ruled on this issue inShampton v. Springboro, 98 Ohio St.3d 457, 786 N.E.2d 883,2003-Ohio-1913. In Shampton, the City of Springboro owned and operated a golf course. The city leased the restaurant on the golf course to a private operator. Upon a search for a new operator, the city chose Shampton. Shampton formed Two Victor Company to run the restaurant. Shampton subsequently entered into negotiations with the city manager, Edward Doczy, for a long-term lease. Doczy created a document titled "Heatherwoode Clubhouse Restaurant Negotiation Issues," which addressed a number of long-term lease issues and listed a proposed lease term of 15 years. Because the two men could not quickly complete a long-term agreement, Doczy asked the city to issue a resolution authorizing him to enter into a temporary lease with Two Victor so that Two Victor could begin operating the restaurant before the start of the summer golf season. Accordingly, the city passed a resolution authorizing the city manager to enter into a temporary lease agreement with the selected operator of the restaurant. Doczy, on behalf of the city, then executed a temporary lease with Two Victor. It provided that either party could terminate the lease without cause by giving 30 days' notice and that the lease would continue in effect until a long-term lease was executed. However, no long-term lease was ever executed. Shampton then closed a restaurant that he had been operating elsewhere and, as the manager of Two Victor, began running the restaurant at Heatherwoode, making substantial financial investments in that facility.
 {¶ 32} Unfortunately, a dispute arose between Shampton and the city regarding taxes. Subsequently, the city terminated its temporary lease with Shampton. Shampton then filed suit against the city, alleging breach of contract and promissory estoppel. The matter proceeded to a jury trial, which resulted in an award in Shampton's favor on both counts. The city appealed. The court of appeals upheld the trial court's judgment.
 {¶ 33} The Ohio Supreme Court reversed. In doing so it found that the city charter did not authorize Doczy to enter into a long-term lease. It noted that the charter allowed the city manager to arrange, prepare, and sign contracts. Importantly, however, the charter also provided that any such contract was not legal until the city council, by ordinance or resolution, either ratified the contract or authorized the city manager to bind the city. Id. at ¶ 29. The court also found that Doczy never entered into a contract with Two Victor because the agreement they did reach was missing some material terms, including which party would be responsible for paying property taxes. Id. at ¶ 31. Thus, the court concluded that a valid contract was never entered into. Therefore, there could be no breach.
 {¶ 34} Next, the court addressed Shampton's promissory estoppel claim. It stated:
 {¶ 35} "To be successful on a claim of promissory estoppel, `[t]he party claiming the estoppel must have relied on conduct of an adversary in such a manner as to change his position for the worse and that reliance must have been reasonable in that the party claiming estoppel did not know and could not have known that its adversary's conduct was misleading.' Persons seeking to enter into a contractual relationship with a governmental entity are on constructive notice of the statutory limitations on the power of the entity's agent to contract. Since state and local laws are readily available for public review, it is a simple matter for a party to educate itself as to the procedural formalities with which government officials must comply before they may bind a governmental entity to a contract. Here, as noted previously, the charter and Resolution No. R-95-32 clearly did not grant Doczy the authority to enter into a long-term lease. As a result, even if Doczy did make any promises regarding the long-term lease, appellees could not have reasonably relied upon them. Liability does not attach to the city based on appellees' mistaken interpretation of the resolution. Thus, appellees' claim of promissory estoppel is without merit." (Internal citations omitted.) Id. at ¶ 34.
 {¶ 36} Like the appellees in Shampton, appellant cannot succeed on theories of promissory estoppel/detrimental reliance. Without a valid, express contract with the city, appellant has not asserted a cause of action against it. Even if city officials made representations to appellant regarding the sale of the Wick Building, appellant could not have reasonably relied upon them. Therefore, appellant cannot assert a claim of promissory estoppel/detrimental reliance.
 {¶ 37} Appellant's first issue presented for review asks, "WHETHER THE MAGISTRATE WAS REQUIRED TO HOLD ORAL ARGUMENTS PRIOR TO RENDERING HIS DECISION."
 {¶ 38} Appellant objects to the timing of the magistrate's decision. Pursuant to an agreed judgment entry, appellant argues that the magistrate scheduled to hear oral arguments from the parties on January 12, 2005. Notwithstanding the agreed judgment entry, the magistrate rendered his decision on January 6, 2005, six days before the date set for oral argument. In making his decision, appellant maintains that the magistrate not only violated the December 15 agreed judgment entry but also violated the interests of equity and justice.
 {¶ 39} In ruling on a motion to dismiss pursuant to Civ.R. 12(B)(6), the trial court is confined to the allegations in the pleading. Savage v. Godfrey (Sept. 28, 2001), 11th Dist. No. 01-AP-388. Appellant contends that the magistrate and trial court are bound by the agreed judgment entry. However, since a hearing is not required, the magistrate has the discretion to render a decision without a hearing. In adopting the magistrate's decision, the trial court was able to consider appellant's memorandum in opposition to the motion to dismiss and its objections to the magistrate's decision. In Savage, the court found that the trial court did not err in failing to conduct a hearing because "[m]otions may be decided wholly on papers, and the dismissal of a complaint without an oral hearing does not violate due process." Id; citing Greene v. WCI Holdings Corp.
(C.A.2 1998), 136 F.3d 313, 3153-16.
 {¶ 40} The same rationale applies to this case. Both the magistrate and trial court were able to rule on appellee's motion by considering the parties' submissions alone. Therefore, while the magistrate should have held an oral hearing to comply with the agreed entry, its failure to do so was not reversible error.
 {¶ 41} Appellant's second issue presented for review asks, "WHETHER APPELLANT'S TORTIOUS INTERFERENCE CLAIM WAS PROPERLY DISMISSED."
 {¶ 42} Appellant asserts that its tortious interference claim was brought against "John Doe" only. Furthermore, appellant maintains that appellee's motion to dismiss did not address the tortious interference claim nor did the parties brief the issue. Appellant contends that the magistrate's decision, which was subsequently adopted by the trial court, dismissed the entire complaint. Appellant argues that the tortious interference claim was not before the court and should not have been dismissed. Thus, appellant contends that it should be allowed to prosecute the claim against John Doe and requests that the cause of action be reinstated.
 {¶ 43} The magistrate's decision states that appellant's claims for breach of contract, promissory estoppel, and tortious interference with a contract failed to state a claim upon which relief can be granted. The trial court did not discuss the tortious interference claim in its order, but only ordered judgment for appellee. However, because the court found that no contract existed, the tortious interference claim should also have been dismissed since without a contract, there can be no tortious interference with a contract.
 {¶ 44} Accordingly, appellant's assignment of error is without merit.
 {¶ 45} For the reasons stated above, the trial court's judgment is hereby affirmed.
Vukovich, J., DeGenaro, J., concurs.